HOUSTON BELT & TERMINAL RAILWAY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8494.   Promulgated May 13, 1927.

1. The discount on bonds of the petitioner purchased below par and retired during the year is not taxable income.

2. Sinking fund payments made to a trustee are to be considered as earned, rather than paid-in, surplus.

3. Advances by stockholders are not invested capital.

4. Current earnings may not be allowed in invested capital.

5. Income taxes paid by another in accordance with agreement, are income to the petitioner in the year when due and payable and, under the circumstances in this case, do not reduce invested capital.

*J. L. Lockett, Esq.,* for the petitioner.
*M. N. Fisher, Esq.,* for the respondent.

This proceeding results from the determination of deficiencies in income and profits taxes for the years 1918 and 1919, totaling $18,-339.19. Petitioner avers errors were committed with reference to the following issues: (1) (a) The 2 per cent tax, for both years, assumable by the Director General of Railroads, was added to the income of the petitioner, and (b) the rates for the computation of the normal tax for 1918 should be 10 per cent instead of 12 per cent, and for 1919 should be 8 per cent instead of 10 per cent; (2) the discount on petitioner's bonds, purchased below par and retired, in both years, was not taxable income; (3) The Commissioner has not allowed in invested capital for both years, the full amount of surplus properly allowable.

The respondent presents an added issue: (4) Whether additional taxable income was realized in 1918 and 1919 by reason of the

liability of the four stockholders under the contract of 1907 to pay petitioner's income and excess-profits taxes.

### FINDINGS OF FACT.

The petitioner is a Texas corporation, organized in 1907, with a paid-in capital stock of $25,000, owning certain terminal property, leasing other property, operating a union depot and terminal railway, and acting as a common carrier, in the City of Houston, Tex. The depot and terminal are conducted primarily for the convenience and greater economy of four railway companies, each owning one-fourth of the capital stock of the petitioner.

The petitioner entered into an agreement in 1907 with the four railway companies which are its sole stockholders. The material portions of this agreement are as follows:

WHEREAS, the Terminal Company is the owner of certain railroad tracks and real estate and is to acquire certain other real estate located and situated in and near the city of Houston, Texas, and is about to construct in said city one or more passenger stations and one or more freight stations, and to acquire by purchase or lease other railroad tracks and terminal facilities, including the terminal facilities leased under a certain indenture of lease to be made by and between Gulf, Colorado and Santa Fe Railway Company and said Terminal Company, a copy of which is hereunto attached marked "Exhibit A" and made a part hereof; and

WHEREAS, the Terminal Company proposes to execute, simultaneously with the execution of this agreement, to Central Trust Company of New York, as Trustee, a mortgage or deed of trust to be known as its First Mortgage, covering all the property and rights of the Terminal Company now owned and hereafter to be acquired, including this present agreement and the rentals to be paid hereunder and prior in right to this agreement, as hereinafter provided, to secure an issue of First Mortgage Thirty Year Five Per Cent Gold Bonds of the Terminal Company not to exceed in aggregate par value five millions of dollars; and for the purpose of refunding or redeeming said bonds and for other purposes the Terminal Company may hereafter execute from time to time during the term of this agreement and in accordance with the provisions hereof other mortgages or deeds of trust to secure other bonds; and

WHEREAS, each of the railway companies, parties of the second part hereto (hereinafter collectively referred to as the Railway Companies) desires, for, purposes of greater economy and convenience, to avail itself of the use of said Passenger and Freight Stations, and all other terminal and railroad facilities now or hereafter during the term hereof owned, controlled or operated by the Terminal Company; and the Terminal Company is willing to grant to each of the Railway Companies the right to use all said facilities upon the terms and conditions hereinafter set forth;

Now, THEREFORE, the parties hereto do mutually covenant and agree as follows:

### ARTICLE I.

The Terminal Company, in consideration of the sums to be paid by the Railway Companies respectively as hereinafter provided, hereby covenants and agrees with the Railway Companies and with each of them as follows:

SEC. 1. That it will proceed with all reasonable dispatch to acquire the necessary real estate and construct and reconstruct the necessary passenger and

freight stations, railroad tracks, and all other railroad and terminal facilities, within a limit of cost and in accordance with plans and specifications as to character and location, all of which shall first have been accepted and approved in writing by each of the Railway Companies. The railroad and terminal facilities constructed, leased and otherwise acquired in accordance with the terms hereof, and all additions and betterments, extensions and improvements made thereto during the term and in accordance with the provisions hereof, are hereinafter called the "Terminal Facilities."

SEC. 2. That it will give and grant, and it does hereby give and grant to each of the Railway Companies for and during the term beginning at the date when the Terminal Facilities shall be ready for use, as in Section 12 of Article III hereof provided, and continuing thereafter for and during the full term of ninety-nine years from and after the date hereof, unless sooner terminated as hereinafter provided, the equal right and privilege to use the Terminal Facilities in common with the Terminal Company and with the other Railway Companies and with any other railroad companies to which similar rights hereafter may be granted by the Terminal Company in accordance with the terms, provisions, conditions and limitations in this agreement expressed.

SEC. 3. That it will keep and maintain the Terminal Facilities at all times during said term, in good order, condition and repair and will protect the same by insurance against loss or damage by fire to a reasonable amount, the cost of such insurance being considered a part of the expense of maintaining and operating the Terminal Facilities as hereinafter provided. If any of the Railway Companies shall disagree with the Terminal Company as to the amount of insurance which should be carried on the Terminal Facilities or any part thereof, the disagreement shall be submitted to arbitration in the manner provided in Section H of Article III hereof.

SEC. 4. That it will not do or omit to do any act, when such doing or omission will operate directly or indirectly to forfeit any of its rights, privileges and franchises under its charter or Articles of Incorporation before the expiration of the same as now limited by law or which will, in any manner, impair the value of any of the privileges, rights or property, the right to use which is hereby granted to the Railway Companies; and that it will, at the expiration of the present term of its corporate existence, cause the same to be renewed and extended in manner and form as may then be provided by law, and will cause similar renewals and extensions to be made from time to time as the same shall be necessary to maintain in perpetuity the existence and power with which it is now vested.

SEC. 5. That it will duly pay or cause to be paid the interest and principal of all mortgage bonds lawfully issued and outstanding under said first mortgage of the Terminal Company and under any other mortgage or mortgages of the Terminal Company executed in accordance herewith, and all sinking fund and other payments due and payable under said first mortgage and any such other mortgage or mortgages of the Terminal Company; all sums due and payable by the Terminal Company under said agreement, Exhibit A; all other rents due and payable by the Terminal Company; all taxes, rates, levies, benefits, assessments and other governmental charges of every kind that in any manner during said term may be lawfully imposed upon or accrue against the said Terminal Facilities or any part thereof, or which may become due and payable by the Terminal Company; and any and all other sums or debts which may at any time become due and payable by the Terminal Company.

SEC. 6. That the Terminal Facilities will be maintained and operated as herein provided and that each of the Railway Companies so long as it pays its one-fourth part of interest, sinking fund payments, rent and taxes as herein-

after provided and its proportionate part of operating expenses as hereinafter provided, and complies with all its other obligations as herein provided shall during said term of ninety-nine years have peaceable and quiet possession and full enjoyment of the Terminal Facilities.

SEC. 7. That it will repay to each of the Railway Companies all sums which shall have accrued and been paid by such Company under Sections 1 and 2 of Article II hereof prior to the date upon which the Railway Companies shall be notified in writing by the Terminal Company as hereinafter provided that the Terminal Facilities are ready for use.

### ARTICLE II.

SEC. 1. Each of the Railway Companies hereby covenants and agrees to pay from time to time during said term of ninety-nine years, unless the obligations of such Railway Company under this agreement shall be sooner terminated by such Railway Company as hereinafter in Section 2 of Article IV provided, the following sums, viz:

(a) To the Trustee under said First Mortgage dated July 1, 1907, executed by the Terminal Company, sums equal to one-fourth of the amounts which shall accrue for the respective installments of interest and sinking fund payments during each fiscal year of such period upon or in respect of all mortgage bonds lawfully issued and outstanding under said First Mortgage of the Terminal Company and issued in accordance with the terms of this agreement.

(b) To the trustee of any other mortgage or deed of trust which may hereafter be executed by the Terminal Company in accordance with the terms hereof, sums equal to one-fourth of the amounts, which may accrue for the respective installments of interest and sinking fund payments, if any, during each fiscal year and such period upon or in respect of all mortgage bonds lawfully issued and outstanding in accordance with the terms of this agreement under any such other mortgage or mortgages; if any such mortgage shall not provide for the payment of such sums by the Railway Companies to the trustee in such mortgage, then such sums shall be payable to the Terminal Company.

The sums to be paid by each Railway Company under this Section 1 of Article II shall be due and payable by each Railway Company within fifteen days after receipt by it of written notice from the Terminal Company stating the amount due from each Railway Company, which notice shall be given not more than twenty-five days prior to the respective dates when the respective installments of interest and sinking fund payments shall become due and payable by the Terminal Company.

SEC. 2. Each of the Railway Companies hereby covenants and agrees with the Terminal Company to pay to the Terminal Company from time to time during said term of ninety-nine years, unless the obligations of such Railway Company under this agreement shall be sooner terminated by such Railway Company as hereinafter in Section 2 of Article IV provided, the following sums, viz:

(a) Sums equal to one-fourth of all sums which shall be payable by the Terminal Company under said agreement (Exhibit A) and under all other agreements for the leasing or acquisition of additional facilities for the use of all the Railway Companies which shall be entered into by the Terminal Company with the written consent and approval of each of the Railway Companies; such sums payable hereunder by any Railway Company to the Terminal Company, shall be payable within fifteen days after the rendition of bills therefor by the Terminal Company, and such bills shall be rendered by the Terminal Company within thirty days prior to the respective dates when the respective sums payable by the Terminal Company shall become due.

(b) Sums equal to one-fourth of all taxes, rates, levies, benefits, assessments and other governmental charges of every kind that in any manner during such period may be imposed upon or accrue against the said Terminal Facilities or any part thereof, or which may become due and payable by the Terminal Company; such sums payable hereunder by the Railway Companies to the Terminal Company shall be payable within fifteen days after the rendition of bills therefor by the Terminal Company which bills shall be rendered within thirty days prior to the respective dates when the respective taxes or other governmental charges to which such bills relate shall be paid by the Terminal Company or shall become due and payable by the Terminal Company.

\*        \*        \*        \*        \*        \*        \*

SEC. 6 (b) All sums which shall be received by the Terminal Company from any railroad company that hereafter may be admitted to the use of the Terminal Facilities, or any part thereof, as rent or compensation for the use thereof, or as payments in the nature of those defined in Sections 1 and 2 of this Article, and all sums that shall be received by the Terminal Company from any of the Railway Companies as rent or compensation for its or their exclusive use of any part of the Terminal Facilities, and all sums that shall be received by the Terminal Company as income or any stocks, bonds or other securities held as a part of the sinking fund provided for in said first mortgage, dated July 1, 1907, or as a part of any sinking fund provided for in any other mortgage of the Terminal Company, shall be applied by the Terminal Company first to the reduction of the sums to be paid by the Railway Companies, respectively, under Section 2 of this Article II, and next for the purpose of reducing the sums to be paid by the Railway Companies respectively under Section 1 of this Article II; except, however, the sums paid by other railroad companies in respect of operating expenses as defined in Section 3 of this Article II; it being the intention that operating expenses shall, except under the conditions set forth in paragraph (a) of this section, be borne by all railroad companies using the Terminal Facilities, on the basis of use as provided in said Section 3 of this Article II.

\*        \*        \*        \*        \*        \*        \*

## ARTICLE III.

SEC. 4. Unless required by law to do so, the Terminal Company shall not, except with the consent in writing of each of the Railway Companies, grant to any other railroad company the right to use the Terminal Facilities, or perform any service for any other railroad company, on terms more favorable than are hereby accorded to each of the Railway Companies.

## ARTICLE IV.

SEC. 2. If the Terminal Company shall fail or refuse to perform or comply with the covenant set forth in Section 1 of this Article IV, or shall fail or refuse to perform or comply with any other of its covenants or undertakings under this agreement, and shall continue in such failure or refusal for a period of thirty days after written notice specifying such failure or refusal given to it by any of the Railway Companies, then any such Railway Company may, at its election, by notice in writing given to the Terminal Company, terminate its obligation to further use the Terminal Facilties under this agreement and all other of its obligations under this agreement. Any party to this agreement shall furthermore have the right to resort to any and all appropriate remedies at law or in equity for the enforcement of any provision of this agreement or for redress for any breach thereof.

Five million dollars par value first mortgage, 30-year bonds of the petitioner were issued during the years 1907 to 1911, inclusive, at a discount, the amount of which discount is not in evidence. The amount of these bonds remaining outstanding on January 1, 1918, was $4,617,000 par value. Under the mortgage the annual sinking fund payment was required to be one per cent of the total par value of bonds previously issued, irrespective of whether or not the entire issue remained outstanding, so that for the years 1918 and 1919 annual sinking fund payments of $50,000 were due and payable. The sinking fund payments were made by the four " tenant lines " to the trustees and applied to the purchase, at a discount, of certain bonds which were thereupon permanently retired.

Prior to December 31, 1917, the four stockholders paid to the petitioner an aggregate of $62,330.05, without any understanding as to repayment, and repayment has never been demanded. The reason for the sum being paid was that the petitioner was unable to bill and collect, as promptly as originally planned, the charges for operating expenses and was embarrassed for lack of sufficient cash. Subsequent to the payments, totaling $62,330.05, a further arrangement was effected whereby drafts for advances were made on the stockholders, when necessary.

During the calendar years 1918 and 1919 the petitioner was under Federal control. In each of the years, $50,000 accrued to petitioner as compensation due from the Director General in lieu of the payments due to trustee from the four stockholders under the contract of 1907.

The petitioner kept its books on the accrual basis.

OPINION.

MILLIKEN: The respondent has admitted error with respect to issues 1(a) and (b).

The question presented in the second issue was considered in the *Appeal of Independent Brewing Co. of Pittsburgh*, 4 B. T. A. 870, and on authority of that decision, the inclusion in the income of the petitioner of the discount on its bonds purchased at discount and retired, was in error. See also *New Orleans, Texas & Mexico Ry. Co.*, 6 B. T. A., 436.

Petitioner avers that the respondent has failed to allow in invested capital for both years the full amount of paid-in surplus to which it is entitled. Admitting inability to reconcile with information available the amounts of surplus included in invested capital by the respondent, the petitioner submits a statement of the total invested capital claimed for each year.

As at the beginning of each year, the aggregate of so much of the payments by the four stockholders, heretofore made to the trustee,

as was applied to the principal of bonds purchased and retired, is claimed allowable in full in invested capital as paid-in surplus. The payments were regularly entered on the books. The petitioner now seeks to resolve the net credit balance of book surplus into a larger amount of paid-in surplus and a profit and loss debit balance in the nature of an operating deficit. The Circuit Court of Appeals for the Fifth Circuit, in the case of *Houston Belt & Terminal Ry. Co.* v. *United States,* 250 Fed. 1, had before it the construction of the instrument providing for the sinking fund payments, and in the light of the decision rendered it is clear that the payments made by the four stockholders of petitioner to the trustee constituted income to petitioner. Being properly classifiable as earned income reducible by operating charges and admittedly entered on the books of account in the years when earned, we are of the opinion that the respondent should be sustained.

Paid-in surplus is claimed in the amount of $62,330.05 for both years, on account of a credit balance of that amount which appears on the balance sheet as "Advances by Railroads." It is in evidence that the occasion for these advances was a lack of sufficient cash capital due to unavoidable delays in collecting operating expenses billed to the debtors, and that later a plan of operation was devised whereby drafts were drawn and accepted for advance payments when required; while it is also in evidence that there was no understanding relative to repayment and no demand for it has been made, there is nothing in the record to indicate that the deposits may not be subject at any time to current settlement or that the advances are other than a convenient method of offsetting receivables delayed in settlement. We find no error in the exclusion of the amount from invested capital.

Petitioner claims for the years 1918 and 1919, additions to invested capital of the effective averages of sinking fund payments on or before June 1, 1918, of $50,000, and on or before June 1, 1919, $50,000. These additions are not allowable due to the express exclusion from invested capital of current earnings, contained in section 326(a)(3) of the Revenue Act of 1918. Having heretofore held that the sinking fund payments constituted income to petitioner, the payments made in the years 1918 and 1919 should be excluded from invested capital and we find no error in such decision of the respondent.

The Commissioner has decreased surplus for 1918 on account of additional taxes for 1915 and 1916 and for the effective average of the 1917 tax; for 1919 the deduction includes additional taxes for 1915, 1916, and 1917, and the effective average of the 1918 tax. In view of article II, section 2(b) of the agreement of 1907, it is evident that the four stockholders are immediately charged with an

equal and offsetting liability to the petitioner with the result that petitioner can suffer no diminution of invested capital in this regard.

The respondent is reversed as to the deduction from surplus of the prior years' additional taxes.

The amounts of Federal income and excess-profits taxes payable in 1918 and 1919 by the petitioner, for which the four stockholders were liable under the contract of 1907, are income for the years within which due and payable. *Appeal of Norwich & Worcester R. R. Co.*, 2 B. T. A. 215, and *Appeal of Providence & Worcester R. R. Co.*, 5 B. T. A. 1186.

*Judgment will be entered on 15 days' notice, under Rule 50.*